LAGOA, J.
P.B., a juvenile, appeals from an order withholding adjudication for corruption by threat against a public servant and resisting an officer without violence. We affirm.
I. FACTUAL AND PROCEDURAL HISTORY
The State charged P.B. with corruption by threat against a public servant to influence her arrest and/or detention, and resisting an officer without violence.
In response to a BOLO involving a black male allegedly casing a home, Officer Las-siter (“Lassiter”) drove in his police vehicle to the location. Lassiter observed P.B., a black female, walking away from the home on the swale area. He recognized P.B. when she turned toward him and he told her to stop. P.B. used an expletive and continued walking. Lassiter testified that he wondered why she was not in school on a school day. Lassiter then exited the police vehicle and told P.B. to stop and “come over here.” When P.B. continued walking, he grabbed her arm, took her to his car and “said get over here and have a seat in the back.” When he asked her to have a seat in the back of the ear, P.B. began “swinging around” and Officer Lassiter told her that she was under arrest. He forcibly put her in the car and she continued “yelling, ... flailing around.”
When Lassiter drove from the area, and started doing paperwork, P.B. cursed, screamed and kicked the windows. She also said that “I’m going to kill you. I’m going to have you killed. I’ve got two brothers in prison for murder and when they get out they’re going to come get you.... She said if you arrest me, if you arrest me I’ve got two brothers in prison for murder, and they’re going to take care of you. They’re going to have you killed.”
Additionally, during trial Lassiter testified that he knew P.B. was under 18. On cross-examination, he was asked whether, if, after he grabbed P.B. by the arm, he stated to her, “stop, you’re under arrest,” and he answered, “yes.” On redirect, Las-siter testified that he knew she should be in school.
After the State rested, the defense moved for a judgment of dismissal, arguing that Lassiter did not have a reason to stop P.B.; that P.B. did not match the BOLO; that she was engaged in innocent behavior; and that there was no evidence that she was of school age or that she should have been in school. Defense counsel also argued that P.B. had no ability to carry out the threats and that there was no evidence that the alleged threats were intended to influence the performance of a legal duty. The trial court denied the motion.
P.B. testified that she was not enrolled in school on the incident date, but that she intended to enroll when she obtained her birth certificate. She stated that she lives in the area and was walking to the pay phone when Lassiter pulled up in his police vehicle and ordered her to stop. She told him that she didn’t do anything, the officer again told her to stop, but that she continued walking. P.B. further testified that Lassiter drove his vehicle in front of her, jumped from his vehicle, grabbed her by the hand and neck, pushed her toward *946 his vehicle, handcuffed her, hit and slapped her, and shoved her into his vehicle. P.B. denied threatening Lassiter.
After the defense rested, the State recalled Lassiter, who denied grabbing P.B. by the neck, choking or hitting her. The defense moved for judgment of dismissal on both counts, on the ground that both require a legal duty and that Lassiter did not have a lawful basis to stop P.B. The trial court denied the motion, found P.B. delinquent on both counts and withheld adjudication of delinquency. P.B. was sentenced to probation. This appeal ensued.
II. ANALYSIS
On appeal, P.B. raises two issues. With respect to the first issue, P.B. argues that her motion for dismissal of the offense of resisting without violence should have been granted as Lassiter was not lawfully engaged in a legal duty when he stopped her.
Similarly, with respect to the second issue, P.B. argues that her motion for dismissal of the offense of corruption by threat against a public servant should have been granted because she was already under arrest when she threatened Lassiter.
We will address each argument separately.
A. Resisting An Officer Without Violence
To support a conviction under section 843.02, Florida Statutes (2009),[1] the State must show: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that duty. See M.J. v. State, 67 So.3d 1189, 1190 (Fla. 3d DCA 2011); N.H. v. State, 890 So.2d 514, 516-17 (Fla. 3d DCA 2005); Jay v. State, 731 So.2d 774 (Fla. 4th DCA 1999). Here, P.B. does not contest that Lassiter is an officer and that she resisted Lassiter. The issue before this Court is whether Lassiter was engaged in a lawful execution of a legal duty. An officer is engaged in the lawful execution of a legal duty when the officer legally detains an individual during an investigatory stop. See C.W. v. State, 76 So.3d 1093, 1095 (Fla. 3d DCA 2011).
In K.A.C. v. State, 707 So.2d 1175, 1177 (Fla. 3d DCA 1998), this Court held that officers “were certainly authorized to conduct an investigatory stop to ascertain the facts” as to whether a juvenile was absent from school without authorization. At the adjudicatory hearing, Lassiter testified that upon seeing P.B. he immediately recognized her and believed she should be in school.[2] P.B.’s refusal to stop when asked to do so by Lassiter obstructed the officer’s investigation. ‘While perhaps an argument could be made that a citizen does not have to cooperate with the police if that citizen reasonably believes that the officers are not engaged in the lawful exe- *947 ration of a legal duty.... [P.B.] went far beyond simply refusing to cooperate.” Billips v. State, 777 So.2d 1094, 1096 (Fla. 3d DCA 2001) (holding that evidence was sufficient to support conviction of obstruction of justice). P.B. struck the officer and when placed in the police vehicle proceeded to kick the windows of the vehicle with her feet. As such, based on the authority of K.A.C., we find that Lassiter was lawfully engaged in a legal duty when he stopped P.B., and we affirm the trial court’s order withholding adjudication for resisting an officer without violence.
B. Corruption By Threat Against A Public Servant
With regards to the second issue raised on appeal, P.B. was charged with violating section 838.021(l)(a), Florida Statutes (2009).[3] P.B. argues that the trial court erred in denying her motion for judgment of dismissal because she was already under arrest when she threatened the officer.[4] Section 888.021(l)(a), however, contains no language which requires that the threat be made before the arrest or detention. See, e.g., J.G. v. State, 915 So.2d 274 (Fla. 4th DCA 2005) (threats made after juvenile was ordered to go to school suspension room or to obtain proof of shots); Smith v. State, 754 So.2d 889, 890 (Fla. 5th DCA 2000) (threats made “during the arrest”); In re P.J., 579 So.2d 299 (Fla. 4th DCA 1991) (threats made while juvenile was under arrest and handcuffed). Indeed, to prove the offense of corruption by threat against a public servant, the State must present evidence of “proof that the threat of harm was used to influence the person threatened to do, or not do, some official act.” Teele v. State, 954 So.2d 1195, 1201 (Fla. 3d DCA 2007).
Here, P.B.’s threat was clearly an attempt to cause Lassiter to rescind his decision to arrest and/or detain her and to transport her to the police station. We conclude that P.B.’s reliance on Kositsky v. State, 974 So.2d 614 (Fla. 4th DCA 2008), is misplaced. In Kositsky, after the defendant was arrested for DUI, he told the arresting officer that “he would slit his throat if the cuffs were removed.” Id. at 616. In dicta, the Fourth District stated that “[t]he result would be different if appellant had threatened to slit the officer’s throat if the handcuffs were not removed.” Id. at 616. As such, the holding in that case rests on the meaning of the threat itself, i.e., whether the threat could not have influenced the officer, rather than, as suggested by P.B., the defendant’s arrest status. Accordingly, because we find that P.B.’s statement demonstrated a threat to influence Lassiter, we affirm the trial court’s order withholding adjudication of delinquency for corruption by threat against a public servant.
Affirmed.
SHEPHERD, J„ concurs.

. Section 843.02 states as follows:
Whoever shall resist, obstruct, or oppose any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Parole Commission or any administrative aide or supervisor employed by the commission; county probation officer; parole and probation supervisor; personnel or representative of the Department of Law Enforcement; or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

. While truancy is not a crime that warrants an arrest, Lassiter did have the authority to stop her and transport her to school. See C.G. v. State, 689 So.2d 1246 (Fla. 4th DCA 1997).

. Section 838.02l(l)(a) states as follows:
(1) Whoever unlawfully harms or threatens unlawful harm to any public servant, to his or her immediate family, or to any other person with whose welfare the public servant is interested, with the intent or purpose:
(a) To influence the performance of any act or omission which the person believes to be, or the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.

. P.B. does not argue that her statement to Lassiter does not constitute a threat under the statute.